LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: | |
| None | None | |

**Proceedings:**         (In Chambers)

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.
### INTRODUCTION

At the pre-trial conference in this case, the parties, after conferring with the Court, agreed that the material facts were not in dispute and that the case could be submitted to the Court for decision on their pre-trial filings, agreeing to what amounts to a stipulated facts trial. (Docket No. 54 [Pl. Mem. of Fact and Law ("Pl. Mem.")]; Docket No. 56 [Def. Mem. of Fact and Law ("Def. Mem.")].) The undisputed facts present the Court with a purely legal question arising out of a failed attempt by the Internal Revenue Service ("IRS") to impose a levy on a delinquent taxpayer's bank accounts.

In 2009, James Waterman ("Waterman") received a tax refund of $75,169, even though his adjusted gross income for the prior year was only $21,594. Discovering the discrepancy, revenue officer Ted Hanson ("Hanson") was assigned to recover the money for the IRS. In an effort to do so, Hanson served a jeopardy levy on Defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"). The levy would have allowed the IRS to seize assets in two bank accounts held by Chase in the taxpayer's name.

However, after service of the notice of levy but before Chase acted to freeze the accounts, Waterman withdrew $40,000 from his accounts. The United States of America ("Plaintiff" or the "United States") has been unable to recover those funds from Waterman, and therefore seeks recovery from Chase. Defendant argues that it froze the accounts with reasonable speed, and should not be held responsible for Waterman's ability to evade the IRS's levy.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

Plaintiff's suit is premised on the rule that "[a]ny person who fails or refuses to surrender any property . . . subject to levy . . . shall be liable in his own person and estate to the United States." 26 U.S.C. § 6332(d)(1). This statute is not specific as to the expediency with which this "surrender" must occur, and the Court previously denied summary judgment to the United States because of this ambiguity.

However, following a further review of the applicable statutes and caselaw, the Court is compelled to change course. When Waterman refused to pay the IRS, the United States was left with only one option: to place a levy on his bank accounts. It did so, shifting any risk that the money might disappear onto Chase's shoulders. Accordingly, the Court must **GRANT JUDGMENT** in favor of the United States. The Court sets forth its reasoning, in further detail, below.

**II.
FINDINGS OF FACT**

James Waterman's adjusted gross income for 2008 was $21,584. (Docket No. 54-1 [Pretrial Conference Order, Stipulated Facts ("Stip. Facts")] ¶ 5a.) Nonetheless, in August 2009, he received a refund of $78,169 from the IRS. (Id. ¶ 5b.) Shortly thereafter, the IRS determined that the refund had been issued in error and that Waterman actually *owed* $92,779. (Id. ¶ 5c.) Waterman's case was then assigned for collection to revenue officer Ted Hanson. (Id. ¶ 5e.) The Office of the Chief Counsel for the IRS then approved the issuance of a jeopardy levy on Waterman's bank accounts. (Id. ¶ 5f.)

At around 9:30 a.m. on September 9, 2009, Hanson went to Waterman's home with the levy in hand, notified him that he owed the IRS roughly $93,000, and, in accordance with IRS statutory authority, demanded payment. (Id. ¶¶ 5g, 5i, 5j.) Waterman did not pay the balance of his debt at that time, so Hanson served him with a series of documents, including a notice that the IRS intended to levy his bank accounts. (Id. ¶¶ 5j, 5k.)

Up to this time, though, the jeopardy levy had not actually been presented to Waterman's bank. (Id. ¶¶ 5m, 5n.) Therefore, after leaving Waterman's home, Hanson drove to a local Chase branch, where Waterman had two bank accounts. (Id. ¶¶ 5m, 5s.) He had $40,050.43 in one account, and another $7,325.04 in the second. (Id. ¶ 5t, 5u.) Defendant subsequently deposited another $0.32 in interest into one of the accounts, for a combined total of $47,375.79. (Id. ¶ 5w.)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

 Just before 9:50 a.m. on September 9, Hanson served the jeopardy levy on one of Chase's employees.  (Id. ¶ 5v.)  She in turn faxed the levy to Defendant's central processing office at 9:50 a.m.  (Id. ¶ 5cc.)  However, less than two hours later—and before Chase had frozen or seized the taxpayer's accounts—Waterman withdrew $40,000 from his accounts.  (Id. ¶5y.)

 Chase eventually froze Waterman's accounts two days later, on September 11, 2009, at 7:59 a.m.  (Id. ¶ 5x.)  By that time, the first account had been drained to only $50.75, while the other had apparently grown to $7,608.73.  (Id. ¶¶ 5dd.)  Chase subsequently sent all of this money—a grand total of $7,659.48—to the IRS on October 1, 2009.  (Id. ¶ 5ee.)

**III.
CONCLUSIONS OF LAW**

**A.  IRS LEVIES**

 The Commissioner of the IRS or his delegate may collect taxes "by levy upon all property and rights to property" belonging to a person who "neglects or refuses to pay" any tax.  26 U.S.C. § 6331(a).  Such a levy includes "the power of distraint and seizure by any means."  G.M. Leasing Corp. v. United States, 429 U.S. 338, 350 (1977) (citing 26 U.S.C. §§ 6331(a) and 7701(21)).  Moreover, "[a]ny person who fails or refuses to surrender any property . . . subject to levy . . . shall be liable in his own person and estate to the United States."  26 U.S.C. § 6332(d)(1).

 Two broad categories of levy are relevant to the consideration of this motion:  levies with something like full notice, and levies with partial notice.  When pursuing a levy under the former category, the IRS must first give the taxpayer prior notice of its intent to pursue a levy.  26 U.S.C. § 6330(a)(1).  This notice must include sufficient information to inform the taxpayer of his due process rights.  Id.  "Upon receiving this notice, the taxpayer has a right to request a collection due process (CDP) hearing with the IRS Office of Appeals."  Zapara v. Comm'r, 652 F.3d 1042, 1044 (9th Cir. 2011) (citing 26 U.S.C. § 6330(b)).

 The second category, which holds the IRS to lesser notice requirements, includes levies imposed after a jeopardy assessment.  This category may be invoked "when the taxpayer is or appears to be: (1) [p]lanning to depart from the United States, or conceal himself or herself; (2) planning to place his property beyond the reach of Commissioner by concealing it, by dissipating it, or by transferring it to other persons; or (3) financially imperiled."  Hoover v. Comm'r, 91 T.C.M. (CCH) 1053 (2006) (citing 26 C.F.R. § 1.6851–1); 26 U.S.C. § 6331(a).  "Generally, if collection is in jeopardy, the [IRS] makes a jeopardy assessment, immediately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

serves a notice and demand on the taxpayer, and then makes a jeopardy levy." Michael I. Saltzman, IRS PRACTICE AND PROCEDURE, ¶ 10.05[6]. "[W]hen a jeopardy assessment is made . . . statutory notice [is] waived." United States v. Matthews, 1992 U.S. Dist. LEXIS 13727, at *23 (E.D. Wash. Aug. 19, 1992). However, while the jeopardy assessment waives the requirement that a taxpayer be notified of his rights and the proposed levy, the IRS must still provide a more limited "notice and demand for immediate payment." 26 U.S.C. § 6331(a); Matthews, 1992 U.S. Dist. LEXIS 13727, at *23. The levy may be imposed mere moments after the notice and demand are made, but the taxpayer must nevertheless be given one final chance to pay his delinquent accounts before the levy is instituted.

**B2. THE LEVY PROCESS IN THIS CASE**

This action derives from a failed attempt to impose a levy under the second category: a jeopardy levy, with lesser notice. The IRS determined that Waterman owed roughly $93,000 in back taxes, and its Office of the Chief Counsel approved a jeopardy levy on two of Waterman's bank accounts maintained by Chase. (Stip. Facts ¶¶ 5c, 5f.) An IRS agent then presented himself at Waterman's residence, notified the taxpayer of his debt, and demanded payment. (Id. ¶¶ 5g, 5i, 5j.)

As described above, a jeopardy assessment allows the IRS to impose a levy immediately after making a demand for payment. Crucially, while it still requires that demand for payment be made before the levy is imposed, the taxpayer *need not* be notified that a levy has already been approved. 26 U.S.C. § 6331(a); Matthews, 1992 U.S. Dist. LEXIS 13727, at *23.

But here, when Waterman refused to pay, the IRS agent provided him with notice of the levy anyway. (Stip. Facts ¶ 5j.) Thereafter the agent went directly to a branch of Chase bank and served the levy on a bank official. (Id. ¶¶ 5m, 5n, 5v.) The official faxed the levy to a central processing unit, where it sat for two days. (Id. ¶¶ 5cc, 5x.) In the meantime, no temporary hold was placed on any of Waterman's accounts, even though 26 U.S.C. § 6332 holds liable "[a]ny person who fails or refuses to surrender any property . . . subject to levy." (Id. ¶ 5y.)

When Waterman raced to the bank two hours after the IRS agent's demand, he was able to withdraw $40,000. (Id.) The money has not been seen since. (Id. ¶ 5hh.)

/ / /

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

**C. THE IMPLICATIONS OF WATERMAN'S $40,000 WITHDRAWAL**

Because this case involved a jeopardy levy, the IRS did not need to tell Waterman of its intent to seize his bank accounts before serving the levy on Chase. While the IRS agent was required to provide one final "notice and demand for immediate payment" before instituting a levy, 26 U.S.C. § 6331(a), his decision to make a further statement regarding the levy was not required and, in hindsight, was ill advised. Providing notice to Waterman of the IRS's intention to levy his bank accounts may have spurred Waterman to withdraw money from those accounts before Chase had the opportunity to freeze them.

Nevertheless, while telling Waterman of the levy itself was clearly improper, there are only two defenses to a violation of 26 U.S.C. § 6332, which holds parties liable for failing to surrender property subject to a levy. First, that the defendant "did not possess any property or rights to property of the taxpayer," and second, that "the property was subject to a prior attachment or execution." United States v. Hemmen, 51 F.3d 883, 887–88 (9th Cir. 1995). The Parties agree that neither is applicable here. (Stip. Facts ¶¶ Def. 7c, 8.)

Instead, Defendant turns to a series of equitable defenses: contribution, violation of internal policies, unclean hands, reasonableness, failure to mitigate, "full satisfaction," "full performance," lack of damages, and offset.[1] (Id. ¶¶ Def. 7a, Def. 7c.) Chase contends, in essence, that its only obligation under 26 U.S.C. § 6332 is to surrender property within a reasonable period of time. (Id. ¶ Def. 7c.) It further argues that it was denied the opportunity to take reasonable steps to locate Waterman's bank accounts because agent Hanson disclosed the IRS's intention to levy the accounts. (Id.) According to Chase, the IRS's actions allowed Waterman to take possession of the funds before they could be frozen, and the IRS therefore caused the loss. (Id.)

The Court previously adopted this equitable reasoning, albeit only in part, while denying Plaintiff's initial motion for summary judgment. (Docket No. 40 [2/27/14 Order].) As the Court said then, "[h]aving ignored the statutory objective by tipping Waterman to its intentions, the IRS can hardly cast the blame for its own failure on Chase." (Id. at 5.)

---

[1] One defense falls outside this rubric. Chase argues that it complied with 26 U.S.C. § 6332 by freezing Waterman's funds on September 11. (Stip. Facts ¶ Def. 7c.) While this may be true for the $7,659.48 actually seized, it has little bearing on the $40,000 withdrawn on September 9. The question before the Court is who bears the risk of loss as a result of the bank's delay in freezing Waterman's accounts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

The fact of the matter, though, is that the IRS was required to tip Waterman off no matter what. Even when jeopardy assessments are made, the IRS must provide notice of demand for immediate payment before any levy may be imposed. 26 U.S.C. § 6331(a). While this notice does not necessarily inform the taxpayer that bank accounts will soon be levied, it certainly lets them know that something is afoot.

Moreover, Section 6332 does not contain any reasonableness element that would delay the vesting of the United States' interest in property under a bank's control. The only requirement is that a bank "surrender any property . . . subject to levy" or risk being held liable for the disappearance of that property. 26 U.S.C. § 6332(d)(1). While it is true that the bank need not immediately "surrender" the property, it must upon being given notice preserve that property or run the risk of paying the depositor's tax bill. That is the state of affairs here. Waterman's money was "property . . . subject to levy," the IRS agent served the bank with the levy giving it notice of the government's claimed interest in the property, and Chase allowed it to slip away. Section 6332 is therefore applicable.

This reasoning is strengthened by a separate provision of Section 6332, which provides for an additional penalty "equal to 50 percent of the amount recoverable" if a person fails to surrender "property or rights to property without reasonable cause." 26 U.S.C. § 6332(d)(2). As subsection (d)(2) makes clear, this penalty is applicable *in addition to* the recovery authorized in subsection (d)(1). The necessary inference is that, while a bank may be liable for 150% of the value of levied property if it acts *un*reasonably, it may be liable for 100% of the levied property even when it acts reasonably.

Finally, the Court is compelled to note two potential justifications for this statutory construction. First, under Defendant's contrary line of reasoning, tax collection could easily be bogged down in disputes with third parties who fail to comply with a valid levy. Absent some statutory mandate, the Court is loath to impose such a granular inquiry on the levy process, which generally operates without judicial oversight. See United States v. Rodgers, 461 U.S. 677, 682 (1983) (a levy is a provisional remedy and typically "does not require any judicial intervention"). Second, and equally as important, once the IRS has served a levy on a bank, the bank is in the best position to protect the property at issue. Plaintiff took advantage of the only tool it had by which to seize Waterman's money; engaging in a reasonableness inquiry would give Defendant, a private bank, some degree of control over the government's ability to collect taxes. And in light of the United States' strong interest in tax collection, "some degree" of interference by private parties is simply too much.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3291 GAF (RZx) | Date | August 15, 2014 |
|---|---|---|---|
| Title | United States of America v. JPMorgan Chase Bank NA | | |

      The Court previously denied summary judgment to Plaintiff, rejecting an argument quite similar to the reasoning adopted above. But further review has altered the calculus and, as they say, "errasse humanum est; et confiteri errorem prudentis."[2] JEROME, THE EPISTLES, 57.12. Judgment must therefore be entered in Plaintiff's favor.

## IV.
## CONCLUSION

      For the reasons given above, the Court finds in favor of the United States. Once the levy was served, Chase was the only party who could have precluded the dissipation of assets. It must therefore bear the burden of its delayed action. Plaintiff shall submit a proposed judgment consistent with this order no later than September 5, 2014.

      **IT IS SO ORDERED.**

---

[2] To have erred is human; it is wise to acknowledge the error.